## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**BOSTON EAST BRUNSWICK
HOLDINGS LLC,
TROCA TYNGSBORO HOTEL LLC,
TROCA HOTELS MANAGEMENT LLC,
and TROCA HOLDINGS LLC**

                **Plaintiffs,**

**v.**

**SACO AND BIDDEFORD SAVINGS
INSTITUTION, TRANZON, LLC, and
AUCTION PROPERTIES LTD.**

                **Defendants.**

**Civil Action No.: 20CV11696**

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Boston East Brunswick Holdings LLC ("Boston East" or "Borrower"), Troca Hotels Management LLC ("Troca Management"), Troca Tyngsboro Hotel LLC ("Troca Tyngsboro") and Troca Holdings LLC ("Troca Holdings") file this action because Defendant Saco and Biddeford Savings Institution ("Saco") has scheduled a foreclosure sale for September 17, 2020 (the "Foreclosure") advertised, promoted and managed by Defendants Tranzon LLC ("Tranzon USA") and Auction Properties Ltd. d/b/a Tranzon Auction Properties ("Tranzon Maine")(Tranzon USA and Tranzon Maine are collectively hereinafter referred to as "Tranzon")(Saco and Tranzon are collectively hereinafter referred to as "Defendants") whereby Defendants plan to unlawfully auction Plaintiffs' assets (Troca Management, Troca Tyngsboro

and Troca Holdings hereinafter referred to as the "Troca Companies" and with Boston East, as the "Plaintiffs").

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over these claims, including: (A) original jurisdiction and federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws or treaties of the United States; (B) original jurisdiction pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121; (C) original jurisdiction pursuant to 28 U.S.C. § 1338(a) and (b) because this action arises under any Act of Congress relating to trademarks and asserts claims of unfair competition; (D) original jurisdiction and diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is diversity of citizenship between the parties; and (E) supplemental jurisdiction the principles of supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.

2.      Defendants are subject to the personal jurisdiction in this Court pursuant to the Massachusetts long-arm statute, M.G.L. c. 223A, and the Due Process Clause of the Fourteenth Amendment by virtue of their  systematic and continuous contact in this judicial district, conduct of business in Massachusetts, and causing tortious injury by acts or omissions to Massachusetts citizens and within Massachusetts.

3.      Defendant Saco also availed itself of the legal system of the Commonwealth of Massachusetts by filing multiple UCC Financing Statements in Massachusetts and with the Secretary of the Commonwealth in connection with a transaction involved in this action.

4.      Defendant Tranzon does regular business in the Commonwealth of Massachusetts and advertises regularly that it "concentrates its auction services in the States of Maine,

Massachusetts…" and "maintains offices in Portland, ME; Westport, CT; Greater Boston, MA" amongst others.

5.      Venue is proper in this district under 28 U.S. § 1391 because a substantial part of the goodwill and intellectual property that is the subject of the action is situated in this district, both parties do business in this judicial district, Defendants' advertising activities using the Infringing Marks have given rise to Plaintiffs' claims and Defendants are subject to personal jurisdiction in this district with respect to this action and there is no other district in which the action may otherwise be brought.

## PARTIES

6.      Boston East Brunswick Holdings LLC is a Massachusetts limited liability company with a principal place of business at 733 Turnpike Street in North Andover, MA. Boston East is the current owner of a land and building situated at 10 Water Street, Brunswick, ME (the "Property") and a borrower under a loan and mortgage from Saco.

7.      Troca Tyngsboro Hotel LLC is a Massachusetts company with a principal place of business at 733 Turnpike Street in North Andover, MA. Tyngsboro is an operating partner of Boston East for the operation and maintenance of hospitality assets.

8.      Troca Hotels Management LLC is a Massachusetts limited liability company with a principal place of business at 733 Turnpike Street in in North Andover, MA.  Troca Management is the management company that operated and managed the Hotel.

9.      Troca Holdings LLC is a Massachusetts company with a principal place of business at 733 Turnpike Street in North Andover, MA.  Troca Holdings is the owner of "The Daniel",

"The Daniel Hotel" and "Coast Bar + Bistro" trademarks, used to develop, brand and market the Hotel and Restaurant since its conversion from the Captain Daniel Stone Inn in 2014.

10.     Saco and Biddeford Savings Institution Saco is a federally chartered bank with its principal place of business at 50 Industrial Park Road Saco, Maine. Saco is the mortgage lender to Boston East.

11.     Tranzon LLC is a Virginia limited liability company with its principal place of business at 2100 Club Drive, Suite 100, Gadsden, AL 35901.

12.     Auction Properties Ltd. is a Maine corporation with its principal place of business 93 Exchange Street, Portland, ME 04101.

## STATEMENT OF FACTS

### *History of the Inn and Acquisition Background*

13.     On November 8, 2011, Saco acquired the Captain Daniel Stone Inn (the "Inn") from its owner, Tourism Properties LLC, which had borrowed funds from Saco to acquire the Inn in June 2009. Saco immediately placed the Inn for sale with New England Hotel Realty, a prominent real estate brokerage firm.

14.     Saco hired Lafayette Hotels ("Lafayette"), a Maine based company, to operate and manage the Inn on its behalf, but despite Lafayette's efforts, the Inn did not provide Saco with positive cash flow, resulting in losses.

15.     In May 2013, after owning the Inn for nearly two years without financial gain or return, Saco received a full price offer from Boston East to purchase the Inn.

16.     Over four months, from the beginning of June through the end of September 2013, Saco and Boston East completed the financial transaction for Boston East's acquisition of the Inn

from Saco. During that time, with the understanding that Saco would be the lender to Boston East in its further development of the Inn, Boston East relied in good faith on Saco's cooperation in conducting diligence on the Inn, including diligence on the condition and health of critical infrastructure at the Inn, including the Inn's heating and cooling ("HVAC") and sprinkler systems.

17.     Unbeknownst to Boston East, Saco was aware of significant problems in the Inn's HVAC and sprinkler systems that it actively hid from Boston East. On days when Boston East personnel were at the Inn to conduct diligence, Saco instructed James Little, the Inn's full-time engineer at the time, to be absent from the Inn, so as to avoid revealing the real condition and extensive problems with the Inn's HVAC and sprinkler systems.  Saco also removed from the Inn all records that would, if discovered, lead a reasonable buyer to discount the Inn's valuation to account for its failing HVAC and sprinkler systems.

18.     On September 30, 2013 Boston East accepted a loan from Saco (the "Loan") to acquire the Inn. Boston East signed several Saco drafted lending documents, including an Adjustable Rate Commercial Promissory Note, a Mortgage Deed, Security Agreement & Financing Statement and a Commercial Security Agreement (collectively the "Loan Documents") which are attached hereto as Exhibit A. The Loan Documents gave Saco a secured interest in the assets of Boston East but did not provide Saco any interest in the assets of the Troca Companies.

### *The Development of The Daniel and the Troca Daniel Trademarks*

19.     From October 2013 through July 2020, Boston East and the Troca Companies invested over $2.8 million at the Property on renovations, upgrades, improvements, and repairs to convert the Inn into a lifestyle luxury hotel (the "Hotel"), which the Troca Companies operated

for Boston East as "The Daniel Hotel" and "Coast Bar + Bistro" under a license agreement from Troca Holdings.

20.     Troca Holdings developed and exclusively owns rights in certain trademarks, including, without limitation, the marks The Daniel, The Daniel Hotel, and Coast Bar + Bistro and logos (individually or collectively the "Troca Daniel Trademarks"), including the following design marks:



21.     The transformation from a quiet inn which only "served limited service menu from Sunday through Wednesday" to the Hotel, a full service luxury property with active restaurant and bar, banqueting, and entertainment which Defendant Tranzon describes as "one of Mid-Coast Maine's premier boutique hospitality properties" required sustained brand investment, thoughtful development and aggressive marketing by the Troca Companies to create and promote the Troca Daniel Trademarks as trademarks representing high quality entertainment and hospitality in a friendly and stylish environment.

22.     For the first time since the construction of the Property in 1819, the Troca Companies and Troca Holdings advertised the Property in interstate and international commerce utilizing media placements outside the local geography in which the Property is located, aggressive social media advertising and web and electronic distribution.

23.     The Troca Companies interstate and international advertising of the Property prominently featured its affiliation with the Troca Daniel Trademarks.

24.     The Troca Daniel Trademarks have received significant unsolicited coverage in various media, including being first named to the "Top 10 in Maine" by the U.S. News and World Report magazine in 2015.

25.     The Troca Daniel Trademarks marks have been used for the purpose of identifying the goods and services of the Troca Companies and distinguishing them from goods and services of others.

26.     Copies of certain representative samples of promotional materials, website pages, menus and coverage resulting from marketing efforts and showing use of certain Troca Daniel Trademarks in connection with goods and services are attached together hereto as Exhibit B.

27.     As a result of the widespread, long, continuous, and exclusive use of the Troca Daniel Trademarks, the purchasing public has come to know and recognize the Troca Daniel Trademarks as identifying the goods and services of the Troca Companies at the Hotel.

28.     As a result of the widespread, long, continuous, and exclusive use of the Troca Daniel Trademarks, Troca Holdings owns valid and subsisting rights to the Troca Daniel Trademarks.

29.     Troca Daniel Trademarks are distinctive both to the consuming public and the Troca Companies' trade.

30.     The Troca Companies and Troca Holdings have expended substantial time, money, and resources marketing, advertising, and promoting the goods and services provided under the Troca Daniel Trademarks.

31.     As a result of the care, skill, and integrity exercised by the Troca Companies in the conduct of business, as a result of the high quality of goods and services rendered by or on behalf of the Troca Companies, under the Troca Daniel Trademarks, as a result of extensive advertising and sales and public acceptance thereof, and as a result of the dependable quality of goods sold and services rendered by the Troca Companies at the Hotel to its customers, the Troca Daniel Trademarks have acquired an excellent reputation within the trade and public who recognize the Troca Daniel Trademarks to identify the high-quality goods and services of the Troca Companies at the Hotel.

32.     The Troca Daniel Trademarks have come to signify the high quality of the goods and services designated by the Troca Daniel Trademarks, and have acquired incalculable distinction, reputation, and goodwill belonging exclusively to the Troca Companies as a result of expenditures and efforts of Troca Holdings and the Troca Companies.

33.     As a result of their distinctiveness and widespread use and promotion, the Troca Daniel Trademarks are famous trademarks within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and other applicable law.

### *The 2019 HVAC System Failure and Flood*

34.     Since 2009 when it initially financed an acquisition of the Property and from 2011 to 2013, when it owned the Property directly, Saco has been aware of the serious HVAC and sprinkler issues present at the Property.

35.     In two separate incidents in July and August 2019, the Property's HVAC system failed causing burst pipes and floods which caused significant damage to the Hotel during the peak summer occupancy period.

36.     The HVAC breakdown forced Boston East to spend significant amounts of money for emergency repairs at the Hotel.

37.     The HVAC breakdown caused Boston East and the Troca Companies to suffer business interruption during a critical and peak revenue period.

38.     As a result of the failure of the HVAC system, resulting flood, and lack of prompt insurance response and coverage, Boston East was not able to make payments to its vendors and upon its loans.

39.     Saco's failure to disclose and active efforts to conceal the HVAC and sprinkler issues at the Property from Boston East are the proximate causes of Boston East's financial distress in the summer and fall of 2019.

### *Selling the Hotel and the Bank's Proposed Alternatives to Foreclosure*

40.     As a result of the HVAC and sprinkler system problems at the Property, Boston East suffered serious financial harm and diminished financial condition.

41.     Boston East's financial condition ultimately resulted in its January 2020 filing for protection under Chapter 11 of the United States Bankruptcy Code.

42.     After an assented to dismissal of its Chapter 11 case, Boston East was approached by Saco with an offer to avoid foreclosure of the Property in early February 2020.

43.      Under the terms proposed by Saco and its SVP/Director of Legal & Governmental Affairs, Bill Kany, Saco was "willing to hold off on [its] foreclosure" if Boston East dropped its

plans to refile for Chapter 11 protection but, instead, marketed the Property for sale and, while doing so, (a) maintained insurance for the Property, (b) provided its 2018 and 2019 tax returns and financials, (c) allowed Saco to "inspect the facility now and on a recurring basis including permitting [Saco] to have the property appraised, (d) allowed Saco "to speak regularly with [Boston East's] real estate agent to get updates on sales prospects; and (e) provided Saco with information regarding elevator repairs to the Property.

44.     To convince Boston East to drop its plans to again seek protection under the United States Bankruptcy Code, Saco advised Boston East in February 2020 that it was "in the best interest of both of us to reach some sort of agreement that will give Boston East some time to effectuate a sale."

45.     When making its offer to "hold off" foreclosure and provide Boston East time to "effectuate a sale" of the Property, Saco was aware that Saco itself had taken twenty-three months to sell the Property when it owned it.

46.     When making its offer to "hold off" foreclosure and provide Boston East time to "effectuate a sale" of the Property, Saco was aware that the United States and State of Maine were entering a viral pandemic, which would impact travel, lodging, and real estate sales, elongating the sales cycles beyond the time period Saco had taken to sell the Property in 2011.

47.     When making its offer to "hold off" foreclosure and provide Boston East time to "effectuate a sale" of the Property, Saco was aware that the Troca Companies would expend significant time, effort and money to maintain, market, and ultimately sell the Hotel during a pandemic.

48.     Boston East and Saco agreed to avoid foreclosure and another Chapter 11 filing and Boston East complied with Saco's conditions for doing so.

49.     Boston East advised Saco that the Troca Companies would maintain the Hotel in good condition, provide funding to employ staff and further deploy resources to ensure the Hotel would be attractive to prospective hotel buyers.

50.     At all times during its dealings with Boston East and the Troca Companies, Saco was aware that its own sales effort to sell the Property took twenty-three months under normal market conditions.

51.     In April 2020, Saco, which was aware of the two year sales cycle for the Property under normal market conditions, advised Boston East that it "realize[d] that the pandemic has inevitably stunted any interest from buyers at this time" but encouraged Boston East to continue to maintain the Property and advise Saco of Boston East's intentions to continue marketing the Property.

52.     Boston East agreed to maintain the Property and continue and mount active efforts to sell the Hotel by extending its listing with the real estate agent it had been working with, who was in regular and systematic contact with Saco.

53.     From mid-April 2020 to mid-July 2020, the Troca Companies invested significant labor and capital resources in the upkeep, maintenance and repair of the Hotel despite the fact the Hotel was closed for revenue generating activities.

54.     In mid-April 2020, Saco acknowledged Boston East's efforts and advised Boston East that "based on the present world situation we are going to be patient."

55.     At all times during its marketing of the Hotel for sale, Boston East advised Saco that it was being assisted by the Troca Companies in marketing and maintaining the Property and that the Troca Companies had temporarily moved additional furniture and brand property to the Hotel in order to further enhance the sales appeal of the Hotel.

56.     On July 13, 2020, Saco acknowledged the Property had been well maintained, noted the sales activity that had been generated by the efforts to sell the Hotel and suggested that Boston East "consider a price drop to signal prospective purchasers that there is some latitude related to the sales price." Boston East responded almost immediately, and on July 16, 2020, reduced the offering price of the Hotel.

57.     The price reduction suggested by Saco was a pretense by Saco to gauge market tolerance for an auction of the Property.

58.     On July 27, 2020, less than two weeks after commending Boston East on sales efforts and actively counseling Boston East to act in a certain way, Saco violated the promises it made when inducing Boston East to act and advised Boston East that while it "did try to remain patient" it could not honor that commitment.

59.     On August 18, 2020, Saco advised Boston East that it had changed the locks to the Property and offered the principal representative of the Troca Companies and seven-year Boston East employee, who was still actively employed full-time by Boston East, a position with Saco.

60.     At all times from February 2020 to July 2020 during the discussions between Boston East, the Troca Companies and Saco, Boston East relied upon its dealing with Saco and its material representations.

61.     Saco offered Boston East an opportunity to sell the Hotel in exchange for a commitment to insure the Hotel and market it for sale. Boston East accepted Saco's offer, and invested time and capital resources to update, repair and market the Hotel, making it more attractive and preparing it for an owner's sale.

62.     Saco violated its duty to act in good faith and its contractual obligations by using the information obtained from Boston East to thereafter undercut and undermine Boston East's efforts to sell the Hotel.

63.     In July 2020, Saco used its conversations with Boston East's real estate agent to determine when sales activity on the Hotel was increasing and had reached a price level that was satisfactory to Saco for sale at auction.

64.     Despite knowledge that the Troca Daniel Trademarks are owned by the Troca Companies and Troca Holdings, Saco prevented Troca Holdings from protecting its trademarks and intellectual property by changing the locks at the Property and offering the Property for sale under trademarks Saco knew it had no right to utilize.

65.     Despite knowledge that the Property includes assets of the Troca Companies, Saco has continued to convert those assets illegally to obtain financial advantage.

66.     In a letter dated August 21, 2020 from Plaintiffs' counsel, Plaintiffs warned Saco that certain property in the Hotel belonged to the Troca Companies ("Troca Property"), and that Saco's possession of the Troca Property was unlawful. Boston East ordered Saco to cease and desist its possession of the Troca Properties. Saco disregarded the order and denied Troca Companies their property.

67.     The Troca Property, among other things, includes (a) the Troca Daniel Trademarks owned by Troca Holdings, (b) confidential and proprietary financial, legal and tax documents spanning from 2013 through present (compromising the Troca Companies ability to file and pay 2019 and 2020 taxes) (c) documents and records governing several relationships between the parties and other operating companies and vendors, (d) computer systems, office equipment and peripherals installed by the Troca Companies to connect the Hotel to the outside world, (e) brand

standard audio-visual equipment specified and installed pursuant to Troca Holdings' brand standards, (f) furniture, artwork, and soft goods specified by Troca Holdings for use in the Hotel, (g) lawn and garden equipment, tools, and supplies used to maintain the Hotel in accordance with brand standards set by Troca Holdings, (h) furniture, equipment and supplies provided in accordance with Troca Holdings standards for the completion of the Federal House at the Hotel, (i) the fire panel and control systems recently installed by the Troca Companies, and (j) food and beverage and kitchen equipment including wine refrigeration units, preparation stations, and other equipment owned by the Troca Companies. Saco not only retains full and unlawful control of the Troca Daniel Trademarks at the Hotel, but also has been knowingly using the Troca Daniel Trademarks and Troca Holdings' specified  brand standards to market the Hotel to potential sellers without Troca Holdings' permission. Any sale without the prior written consent of the owner of the Troca Daniel Trademarks and the title holder to the assets at the Hotel would create liability upon the seller and result in damage to the Troca Companies that Defendants would be responsible for rectifying.

68.     Saco contracted with Defendant Tranzon to market the Property at an auction scheduled for September 17, 2020.

69.     Tranzon is an experienced and seasoned business and real estate auctioneer.

70.     The Troca Daniel Trademarks are now and were, at the time Tranzon first used them in an unauthorized manner, clearly delineated as trademarks of the Troca Companies.

71.     Tranzon's experience in assets, trademarks, brands, and other matters relevant to auctions suggest that it was aware that it had no right to use the Troca Daniel Trademarks in the marketing of the Property at auction.

72.     With knowledge that it had no right to market the Property for sale utilizing the Troca Daniel Trademarks, Defendant Tranzon marketed the Property for sale to a national audience utilizing the Troca Daniel Trademarks featuring both "The Daniel Hotel" and "Coast Bar + Bistro" names, likenesses and brand images.

73.     Tranzon's unauthorized use of the Troca Daniel Trademarks in marketing its auction generated significant local and interstate media and news interest.

74.     Without Troca Holdings' authorization and beginning after Troca Holdings acquired protectable exclusive rights in the Troca Daniel Trademarks, Defendants Saco and Tranzon adopted and began using the Troca Daniel Trademarks, including, without limitation, marketing the Property using, without authorization,  the Troca Daniel Trademarks in interstate commerce in areas where Troca Holdings owns priority rights in the Troca Daniel Trademarks.

75.     Upon information and belief, Defendants Saco and Tranzon have marketed, advertised, promoted, and offered for sale the Property under the Troca Daniel Trademarks through marketing, advertising, and promotional channels and media that are the same, similar to, or overlap with channels and media of Troca Holdings' goods and services  and under the Troca Daniel Trademarks in territories where Troca Holdings owns priority rights.

76.     Copies of representative promotional materials produced by Tranzon showing the unauthorized use of certain Troca Daniel Trademarks by Tranzon are attached together hereto as Exhibit C.

77.     Defendants Saco and Tranzon's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public into mistakenly believing that Saco and Tranzon's offerings are associated or affiliated with the Troca Companies or are otherwise authorized by Troca Holdings.

78.     Upon information and belief, Defendants Saco and Tranzon's illegal use of the Troca Daniel Trademarks are willful and with the deliberate intent to trade on the goodwill of Troca Holdings' Troca Daniel Trademarks, cause confusion and deception in the marketplace, and divert buyers away from a direct sale involving the licensed and authorized sale of the Hotel to themselves.

79.     Defendants Saco and Tranzon's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to the Troca Companies and Troca Holdings for which the Troca Companies have no adequate remedy at law.

80.     Consequently, Saco has not only unlawfully enriched itself from the on-going and continuous use of the trademark, but simultaneously has diluted and tarnished the trademark in the greater travel community and throughout all geographic markets where the Troca Daniel Trademarks were displayed by continuously associating the mark with a foreclosure proceeding.

81.     On August 18, 2020, Saco advised Boston East that Saco had hired Cheryl Palmertree ("Palmertree"), a seven-year team member of the Troca Companies and Boston East.

82.     Saco abused its authority and tortiously interfered with Plaintiffs' contractual relationships with their employees and staff when Saco offered Palmertree a position with Saco.

83.     Saco used coercion and deception to convince Palmertree to leave her employment with Boston East and the Troca Companies.

84.     Saco coveted and unlawfully benefitted from the business and trade elements and secrets of Troca Holdings and the Troca Companies when Saco induced Palmertree to leave her position with Boston East to work for Saco.

85.     Saco has and continues to abuse its authority. Saco has quietly created and reaped for itself the benefit of a scheme that (a) induced Boston East to repair the Property for Saco's

gain; (b) converted Troca Property, including the Troca Daniel Trademarks, for Saco's own ill-gotten gain by enhancing the look, feel, value, business opportunity and marketability of the Hotel for all prospective purchasers; and (c) intentionally and knowingly interfering with Boston East and Troca Companies' employer-employee relationship with Palmertree to convert and steal for its own economic gain a key employee from its own mortgage borrower, with which it had an agreement to honor.

86.     Saco is boosting the value of the Hotel for its own benefit by marketing and showcasing for sale far more than it is legally able to do.

87.     As a result of Saco's actions, Plaintiffs have each suffered damages.

## COUNT I
### Violation of Troca Holdings' Common Law
### Trademark Rights in the Troca Daniel Trademarks
### (Boston East and Troca Holdings v. Saco and Tranzon)

88.     Troca Holdings reincorporates by reference the preceding paragraphs of the Complaint as though fully set forth herein.

89.     Troca Holdings has the exclusive right to use the Troca Daniel Trademarks.

90.     Defendants knowingly and unlawfully have used, and continue to use, the Troca Daniel trademarks for their benefit without authorization.

91.     Defendants' unauthorized use of the Troca Daniel Trademarks in territories in which Troca Holdings has priority rights as described herein, including use by Tranzon in conjunction with marketing and offering for sale the Property at auction is likely to cause confusion, mistake, or deception and constitutes trademark infringement under applicable common law.

92.     Upon information and belief,  Defendants' acts are willful with the deliberate intent to trade on the goodwill of the Troca Daniel Trademarks, cause confusion and deception in the marketplace, and divert from a likely sale of the Hotel by Boston East to Tranzon's auction for the Property.

93.     Defendants Saco and Tranzon, by the acts complained of herein, are causing, and unless restrained, will continue to cause damage and irreparable harm to Plaintiffs Boston East and Troca Holdings and to their valuable reputation and goodwill with the consuming public for which Plaintiffs have no adequate remedy at law.

## COUNT II
### False Designation & Unfair Competition - Violation of §43(a) of the Lanham Act
### (Troca Holdings v. Saco and Tranzon)

94.     Troca Holdings reincorporates by reference the preceding paragraphs of the Complaint as though fully set forth herein.

95.     This count is for unfair competition and false designation of origin under United States law, including Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

96.     Defendants unauthorized use of the Troca Daniel Trademarks as alleged herein constitute use of a false designation of origin and misleading description and representation of fact.

97.     Defendants' conduct as alleged herein is intended to and is likely to cause confusion, mistake, or deception as to the sponsorship or approval of Defendants' commercial activities.

98.     Defendants, in commercial advertising or promotion, have misrepresented the nature, characteristics, or qualities of their commercial activities.

99.     Defendants' conduct as alleged herein has caused and is causing injury to Troca Holdings, the public, and the market for Troca Holdings' brands in territories in which Troca Holdings has priority rights.

100.    Defendants conduct as alleged herein constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

101.    Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Troca Holdings, and to its goodwill and reputation, and will continue to both damage Troca Holdings and confuse the public unless enjoined by the Court. Troca Holdings has no adequate remedy at law.

102.    Troca Holdings is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorney fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 116 and 117, together with prejudgment and post-judgment interest.

## COUNT III
### Federal Trademark Dilution - Violation of §43(c) of the Lanham Act
### (Troca Holdings v. Saco and Tranzon)

103.    Troca Holdings reincorporates by reference the preceding paragraphs of the Complaint as though fully set forth herein.

104.    This count is for trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

105.    Troca Daniel Trademarks, through long and exclusive use, advertising, and publicity, have become distinctive of Troca Holdings' goods and services and have become famous.

106.    Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and have already caused Troca Holdings irreparable damage and will, unless enjoined, continue to so damage Troca Holdings, which has no adequate remedy at law.

107.    Troca Holdings is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorney fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 116 and 117, together with prejudgment and post-judgment interest.

## **COUNT IV**
**Trademark Dilution under Massachusetts Law**
**(Troca Holdings v. Saco and Tranzon)**

108.    Plaintiffs reincorporate by reference the preceding paragraphs of the Complaint as though fully set forth herein.

109.    This count is for trademark dilution under the laws of the Commonwealth of Massachusetts, Mass. Gen. Laws Chapter 110H §13.

110.    Troca Daniel Trademarks are famous marks.

111.    Troca Daniel Trademarks are highly distinctive.

112.    The Troca Daniel Trademarks are strong marks and are inherently distinctive or have acquired secondary meaning and distinctiveness through long and exclusive use, advertising, and publicity.

113.    Defendants' acts as alleged herein have caused and are likely to cause: (a) reduction in the value of the Troca Daniel Trademarks caused by actual or potential confusion; (b) injury resulting from the illegal use of the Troca Daniel Trademarks that tarnishes the reputation

associated with the Troca Daniel Trademarks; and (c) diminution in the uniqueness, individuality, and distinctive quality of the Troca Daniel Trademarks.

### COUNT V
### Violation of Federal Trade Commission Act – 15 U.S.C. §45
### "Unfair and Deceptive Practices"
### (Plaintiffs v. Saco and Tranzon)

114.   Plaintiffs reincorporate by reference the preceding paragraphs of the Complaint as though fully set forth herein.

115.   Saco induced Boston East and the Troca Companies to market and sell the Hotel but thereafter, through deception, obtained and utilized information obtained from Boston East and the Troca Companies and their advisors to the exclusive benefit of Saco.

116.   Saco induced Boston East and the Troca Companies to insure, improve, repair and maintain the Hotel despite its intention to deceptively use Boston East and the Troca Companies' efforts for Saco's own exclusive benefit.

117.   Saco deprived Boston East and the Troca Companies of the opportunity to market and sell the Hotel, including the Troca Daniel Trademarks brand affiliation.

118.   Despite the Cease and Desist Letter, Saco knowingly continues to convert the Troca Property and unlawfully use the Troca Daniel Trademarks and other intellectual property of the Troca Companies.

119.   As a result, Plaintiffs have suffered damages at the hands of the Defendants.

### COUNT VI
### Violation of Massachusetts General Laws Chapter 93A
### (Plaintiffs v. Saco and Tranzon)

120.   Plaintiffs reincorporate by reference the preceding paragraphs of the Complaint as though fully set forth herein.

121.   For the reasons explained above, Saco and Tranzon knowingly and willfully committed unfair and deceptive acts in trade or commerce to the detriment of the Plaintiffs and have violated Chapter 93A of the Massachusetts General Laws, Mass. Gen. Law ch. 93A §§ 2 and 11.

122.   As a result, the Plaintiffs have suffered damages.

**COUNT VII**
**Conversion**
**(Troca Management, Troca Tyngsboro and Troca Holdings v. Saco)**

123.   Troca Companies reincorporate by reference the preceding paragraphs of the Complaint as though fully set forth herein.

124.   Troca Companies own and have stored and deployed, in connection with license and management agreements, various assets at the Property.

125.   The Property remains under the exclusive control of Saco.

126.   Despite a demand to do so, Saco has failed to return to Troca Companies the Troca Property, and further have denied the Troca Companies the opportunity to retrieve the same. The doors at the Hotel remain locked.

127.   Saco intends to Foreclose the Hotel with the Troca Companies' assets remaining therein.

128.   As a result, Troca Companies have suffered damages at the hands of the Defendant Saco.

**COUNT VIII**
**Breach of Contract**
**(Plaintiffs v. Saco)**

129.   Plaintiffs reincorporate by reference the preceding paragraphs of the Complaint as though fully set forth herein.

130.   Saco offered Boston East and the Troca Companies the right to sell the Hotel and license to a buyer the use of the Troca Daniel Trademarks, in exchange for the commitment to insure the Hotel and keep it in good repair despite the Hotel being closed during a pandemic. Boston East and the Troca Companies accepted the offer and invested resources to do so.

131.   Saco was aware of the timeframe necessary to properly market and sell the Hotel, having itself taken twenty-three months to sell the Hotel under normal market conditions.

132.   Boston East was in the process of marketing and selling the Hotel, during which effort, Saco arbitrarily and capriciously took full control of the Hotel, illegally converted assets of the Troca Companies, and now seeks to sell at auction.

133.   Plaintiffs have suffered damages as a result of Saco's actions.

**COUNT IX**
**Detrimental Reliance**
**(Plaintiffs v. Saco)**

134.   Plaintiffs reincorporate by reference the preceding paragraphs of the Complaint as though fully set forth herein.

135.   Plaintiffs reasonably relied on the representations of Saco, namely, that Plaintiffs would have a reasonable opportunity to sell the Hotel and return the assets of the Troca Companies to their respective owners.

136.   Saco had itself taken nearly twenty-four months to locate a buyer for the Hotel, and that during normal market conditions.

137.   Saco expressed a willingness to be patient with the sale process of the Hotel in order to induce Boston East and the Troca Companies to agree to make investments of money, time and effort that they would not otherwise make.

138.   Plaintiffs invested resources to update, maintain and repair the Hotel upon reliance on the commitments made by Saco.

139.   After Plaintiffs honored their commitments, Saco violated its agreement and took control of the Property in order to proceed to the Foreclosure.

<u>COUNT X</u>
**Breach of the Covenant of Good Faith and Fair Dealings**
**(Plaintiffs v. Saco)**

140.   Plaintiffs reincorporates by reference the preceding paragraphs of the Complaint as though fully set forth herein.

141.   Saco has, throughout its dealings with Boston East, continuously violated its implied covenant of good faith and fair dealings.

142.   Much like it had done when it concealed the true condition of the Property's HVAC and sprinkler systems, Saco enticed Boston East and the Troca Companies to act in ways based on promises that were false.

143.   Saco sought to communicate directly with Boston East's broker, not to ensure that the property was being marketed as agreed, but rather to determine when it would itself commandeer the Property and its disposition.

144.   Saco sought to communicate directly with Boston East's employees, not to ensure that its collateral was secure, but rather to be able to hire said employees improperly in the future.

145.   Saco's breach of the covenants of good faith and fair dealings have caused Plaintiffs significant losses.

## **RELIEF REQUESTED**

**WHEREFORE,** Plaintiffs respectfully requests judgment against Defendants as follows:

1. Enter judgment in favor of Boston East and Troca Holdings on Count I;

2. Enter judgment in favor of Troca Holdings on Count II, III and IV;

3. Enter judgment in favor of Plaintiffs on Counts V, VI, VIII, IX, and X and double or treble those damages, where applicable, as the Court deems proper, and award reasonable attorney fees and costs.

4. Enter judgment in favor of Troca Management, Troca Tyngsboro and Troca Holdings on Count VII;

5. Award reasonable attorney fees and costs to each plaintiff and grant such other and further relief this Honorable Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury on all claims so triable.

Respectfully submitted,

Date: September 15, 2020

*/s/ Anthony Bistany*
Anthony Bistany, Esq. BBO # 691850
18 Morgan Drive
Methuen, MA  01844
978-902-0661
tonybistany@gmail.com

*Counsel for Plaintiffs*
*Boston East Brunswick Holdings LLC,,*
*Troca Tyngsboro Hotel LLC,*
*Troca Hotels Management LLC, and*
*Troca Holdings LLC*

26